IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| FREDERICK CRUMBLEY | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 9:09cv14 |
| GREGORY DAWSON, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Frederick Crumbley filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the Texas Department of Criminal Justice, Correctional Institutions Division. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).

An evidentiary hearing was conducted on March 23, 2010. At this hearing, Crumbley testified that on April 9, 2007, he was at the Gib Lewis Unit when he was called out to work as a "fire watch," apparently a night watchman in the factory. He stayed the night there and was let out in the morning, at which time he went to the law library and then went to sleep. That same day, Crumbley said, a weapon was found in the cell of an inmate named Williams, but he, Crumbley, was charged with possessing it.

A hearing was held, and he called Sgt. Gilchriest to verify that Crumbley had been in the factory all night. However, Crumbley says, the disciplinary hearing officer "harassed" Gilchriest to change his statement. Crumbley testified at first that he believed that Major Helm charged him with possession of the weapon in retaliation for Crumbley's complaining that he should not have been in the factory; however, he then said that he did not think that it was retaliation, but that Helm had said that Crumbley was not fit to be classified as a State Approved Trusty II.

1

Crumbley stated that because of his medical condition, he should not be working in the factory at all. When he complained about this, he said, he was reassigned to another job, but then was put back into the factory. He stated that he kept complaining about his job assignment, and so he received the weapons case, again invoking a theory of retaliation.

After he was convicted on the weapons possession case, Crumbley says that he lost his S-2 classification status, but he got it back after the case was overturned. However, as a result of the disciplinary case, Crumbley also said that he served 17 days in solitary confinement and that ever since he received that case, his date of release on mandatory supervision keeps changing. Crumbley disavowed any intent to challenge the fact or duration of his confinement or his actual date of release on mandatory supervision.

In his amended complaint, Crumbley complained of an incident which occurred on December 18, 2008. He said that an officer named Meador pushed him into a fire box of a barbeque pit, burning him, and then would not let him seek medical care. Instead, he says, Meador applied butter and a cold rag to his burns and broke one of the blisters with a pin. He filed a grievance about the incident and Meador charged him with assaulting her with a weapon, but there was no evidence to support this charge and so the case was dismissed for lack of evidence.

Crumbley said that he wrote to Warden Dawson and filed five life endangerment complaints. After his disciplinary case was dismissed, he was put back in the factory, where he says that officers threatened him. Crumbley complained that no investigations were done on his life endangerment complaints and that the Office of the Inspector General told him that he had to contact the senior warden, but when he did, he got no response. He also wrote to the TDCJ Ombudsman and to the Director. Finally, Crumbley says, an investigation was begun, but he never heard anything about it.

Crumbley said that Warden Dawson knew everything that was going on but did nothing. He stated that Warden Roesler held a reclassification hearing, but that Roesler told him that he could not give back everything that was taken as a result of the case. Crumbley says that Roesler told him that he knew that Crumbley had not been in possession of a weapon, but that the case had been

2

"rushed through" and now was being overturned. He says that Roesler knew that the case would affect his parole but ran it anyway.

Next, Crumbley says that he kept talking to Major Helm about a job change, because Crumbley said that he was disabled. He says that Helm "punished him for being disabled" and that the only job which Crumbley could do was as a laundry attendant. Crumbley contended that Helm interfered with his medical restriction by assigning him a job outside of his classification and that the medical department had told Helm that Crumbley could not work in the factory, but Helm replied that he would "put him where he wants him."

Crumbley at first said that Captain Hopson was the charging officer in the weapons case, saying that Hopson put "false evidence" in the case, even though the weapon had been taken from Williams. However, he also testified that Helm had actually written the case and put Hopson's name on it, even though Hopson was not even on the unit at the time. The grievances which Crumbley filed indicate that Hopson was the charging officer and that Helm was the grading officer who reviewed the case.

Crumbley stated that Captain Moore, the disciplinary hearing officer, "harassed his witness," Gilchriest, and found Crumbley guilty. He says that the hearing had been set for April 7, 2007, but was re-convened on April 23 so that Moore could talk to Helm and Hopson. At the second hearing, Crumbley says, all of the evidence supporting him was gone. He wanted to call Gilchriest but Gilchriest changed his statement, and Moore put a statement in the record and back-dated it. He said that he heard Gilchriest talking to other officers about how Moore wanted him to change his statement. At the hearing, Crumbley says that his counsel substitute "instructed" Moore to dismiss the case, but on April 27, Moore told him that Gilchriest had changed his statement. Crumbley also indicated that he wanted to sue Gilchriest for changing his statement; he says that Moore told him that Gilchriest gave a statement "outside the record," but conceded that he did not know what Gilchriest had said. As punishment for the disciplinary case, Crumbley says that he received 45 days

of cell and commissary restrictions, 45 days of visitation restrictions, 17 days of solitary confinement, reduction in classification status, and the loss of 45 days of good time credits.

Crumbley also sued Captain McFarland, the hearing officer in the case he received from Meador. He concedes that McFarland found him not guilty, but said that his complaint was that McFarland never reported that Meador had lied or that Meador had tried to injure him.

Crumbley sued a person named Natalie Hadnot, but said that he wanted to dismiss her from the case. He sued Major Carter, indicating that Carter did not investigate his allegations regarding Meador properly, and he sued Brad Livingston, the Executive Director of the Texas Department of Criminal Justice, because Livingston, as Director, was responsible for the actions of his subordinates.

## The TDCJ Records

Crumbley's disciplinary records show that he was convicted of hiding weapons in the bunk of another inmate, but this disciplinary case was overturned on appeal. He also received a case where Officer Meador accused him of assaulting her with a weapon, specifically a water hose, which she accused him of pulling tight as she walked by in an attempt to trip her. Another officer gave a statement saying that Meador tripped over the hose but that Crumbley had not pulled it, and that Meador was mad because the papers she was carrying got wet. The statement says that Meador called the officer over and asked him to say that Crumbley had done it on purpose, but the officer refused to do so.

## Legal Standards and Analysis

Crumbley asserts that he received a disciplinary case written by Captain Hopson for possession of a weapon even though Hopson knew that the weapon had been possessed by Williams and not by Crumbley. This case has been overturned and so the conditions in Edwards v. Balisok, 117 S.Ct. 1584, 1587-88 (1997), have been met. Crumbley also indicates that the weapon case may have been given to him in retaliation for grievances which he wrote about his job assignment. Crumbley's claim against Hopson requires further judicial proceedings.

4

Similarly, Crumbley says that Captain Moore, the disciplinary hearing officer, got Crumbley's witness to change his testimony so as to support a finding of guilt. This claim, if proven, could indicate that Moore was not impartial and that Crumbley was denied due process in the court of the hearing. This claim also requires further judicial proceedings.

Third, Crumbley sues Major Helm, saying that Helm assigned him to jobs outside of his medical classification. The Fifth Circuit has stated that if prison officials assign an inmate to a work detail and they know that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference. Mendoza v. Lynaugh, 989 F.2d 191, 194 (5th Cir. 1993). This claim requires further judicial proceedings.

Fourth, Crumbley sues Captain Meador for pushing him into the barbeque pit and then denying him medical treatment. These claims require further judicial proceedings. He also says that he wanted to sue Meador for writing him a false disciplinary case. The courts have held that a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986). The mere filing of false charges does not amount to a constitutional violation because the deprivation of a liberty interest is effected by the finding of guilty, not by the mere filing of the false charges, and the inmate was given an opportunity, in accordance with the due process structures of Wolff, to rebut the charges at the disciplinary hearing. Freeman, 808 F.2d at 952-53.

In Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit explained that the allegation that a prison guard planted false evidence that implicates an inmate in a disciplinary infraction fails to state a claim where the procedural protections as required in Wolff v. McDonnell are provided. Hanrahan, 747 F.2d at 1141. The Court stated that although prisoners are entitled to be free from arbitrary action and conduct of prison officials, the protections against such arbitrary action are the procedural due process requirements set forth in Wolff. Hanrahan, 747 F.2d at 1140.

In this case, Crumbley was found not guilty on the disciplinary charges brought by Meador, and so the due process protections which he was given operated properly. As such, the mere filing of the case by Meador did not deprive Crumbley of a liberty interest, and so his claim on this point is without merit.

Crumbley next sues Warden Gregory Dawson, Warden Michael Roesler, and TDCJ Executive Director Brad Livingston, testifying that Dawson "knew everything that was going on but did nothing" and that Livingston was the head of the prison system and thus responsible for what went on. In his complaint, he says that Dawson "is over the Gib Lewis Unit and the actions taken by the officials."

The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Crumbley has not shown that Warden Dawson, Warden Roesler, or Brad Livingston were personally involved in a constitutional deprivation, that wrongful conduct by either of these persons was causally connected to a constitutional violation, or that Dawson, Roesler, or Livingston implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. He has shown no basis for liability on the part of Dawson, Roesler, or Livingston and so his claims against these defendants should be dismissed.

Nor does the fact that Warden Roesler held a reclassification hearing, the results of which Crumbley did not like, show a constitutional violation. The Fifth Circuit has held that inmates do not have a protected liberty interest in their custodial classification. Wilson v. Budney, 976 F.2d

957, 958 (5th Cir. 1992). Crumbley has not shown that he was denied due process in this reclassification hearing or that he was thereby deprived of a constitutionally protected liberty interest. His claim on this point is without merit.

Crumbley sues Officer Gilchriest, indicating that Gilchriest had changed his testimony after being pressured to do so by Captain Moore. In the context of criminal proceedings, the Supreme Court has held that witnesses in judicial proceedings are immune from suit. Briscoe v. LaHue, 460 U.S. 325, 330-31 (1983). While a prison disciplinary case is not a criminal proceeding, logic compels a similar conclusion. Furthermore, the prisoner has a right to due process in the proceeding, which process can be provided only by the hearing officer, not by a witness, whether favorable or adverse. Crumbley's claim against Gilchriest is without merit.

Crumbley next sues Captain McFarland, the hearing officer in the case filed by Captain Meador. He concedes that McFarland found him not guilty, but says that his complaint was that McFarland did not report the incident.

The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994).

In this case, the information available to McFarland was that Captain Meador had filed a disciplinary case against Crumbley for assaulting her, but that the preponderance of the evidence did not support the charge. Assuming that McFarland did not report this to his superiors, Crumbley has failed to show that this amounted to a deprivation of any of his rights which are secured by the Constitution or laws of the United States. Even if McFarland's failure to report the incident amounted to a violation of TDCJ rules and regulations, a dubious proposition in and of itself, the Fifth Circuit has stated that a violation of prison rules alone is not sufficient to rise to the standards

of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). Crumbley's claim against McFarland is without merit.

Finally, Crumbley sued Natalie Hadnot, of the Texas Board of Pardons and Paroles, but stated at the evidentiary hearing that he wished to dismiss her. Hadnot would be immune from suit in any event, *see* Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995), but Crumbley's request for voluntary dismissal of Hadnot from the lawsuit should be granted. Rule 41(a), Fed. R. Civ. P.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Crumbley's claims against Brad Livingston, Warden Roesler, Warden Dawson, Officer Gilchriest, and Captain McFarland lack any arguable basis in law and fail to state a claim upon which relief may be granted. Consequently, these claims may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). Crumbley's claims against Natalie Hadnot should be dismissed on the motion of the Plaintiff. It is accordingly

ORDERED that the Plaintiff's claims against Brad Livingston, Warden Roesler, Warden Dawson, Officer Gilchriest, and Captain McFarland are hereby DISMISSED with prejudice as frivolous. It is further

ORDERED that the Plaintiff's claims against Natalie Hadnot are hereby DISMISSED with prejudice on the motion of the Plaintiff. It is further

ORDERED that these above-named Defendants are hereby DISMISSED as parties to the lawsuit. The dismissal of these claims and parties shall have no effect upon the remaining claims and parties in the case. Finally, it is

ORDERED that the dismissal of these claims and parties shall not count as a strike for purposes of 28 U.S.C. §1915(g).

So **ORDERED** and **SIGNED** this **28** day of **May, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE