IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| FREDERICK JEROME CRUMBLEY | § | |
| v. | § | CIVIL ACTION NO. 9:09cv14 |
| GREGORY DAWSON, ET AL. | § | |

### MEMORANDUM OPINION ON THE MOTION FOR SUMMARY JUDGMENT BY THE DEFENDANTS HOPSON, MOORE, AND HELM

The Plaintiff Frederick Crumbley, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceedings pursuant to 28 U.S.C. 636(c). The remaining defendants in the case are Major Frank Helm, Captain Glenn Hopson, Captain Connelly Moore, and food service manager Sherly Meador.

In his complaint and at an evidentiary hearing, Crumbley said that on April 9, 2007, he was at the Gib Lewis Unit when he was called out to work as a "fire watch" in the factory, apparently a night watchman. He stayed the night there and was let out in the morning, at which time he went to the law library and then to sleep. That same day, a weapon was found in the cell of an inmate named Williams, but he, Crumbley, was charged by Major Helms with possessing it.

At the disciplinary hearing, Crumbley called Sgt. Gilchrest to testify that he had been in the factory all night, but the hearing officer pressured Gilchrest into changing his story. Crumbley says that because of his medical condition, he should not be working in the factory at all, but when he complained about this, he was moved to another job and then back into the factory. He speculated that his complaints about his job assignment may have led to the weapons charge.

1

Crumbley stated that he was convicted on the weapons charge and lost his classification status, but he got it back after the case was overturned. However, he served 17 days in solitary confinement as a result of the case, and ever since he got it, the date of his projected release on mandatory supervision keeps changing.

In his amended complaint, Crumbley complained of an incident which occurred on December 18, 2008, in which Meador pushed him into the fire box of a barbeque pit, burning him, and then would not allow him to seek medical care. Instead, he says, Meador applied butter and a cold rag to his burns and broke one of the blisters with a pin. He filed a grievance about the incident and Meador charged him with assaulting her with a weapon, but there was no evidence to support the charge and so the case was dismissed. Crumbley wrote to the warden and also filed five life endangerment complaints, but no investigations were done. He wrote to the warden, the TDCJ Ombudsman, and the director of the prison, and an investigation was eventually begun, but Crumbley never heard anything about it.

After review of the pleadings and testimony, a partial order of dismissal was entered which dismissed all of the defendants except for Hopson, Moore, Helm, and Meador. The Court noted that Crumbley's claim against Hopson involved the writing of a false disciplinary case, which may have been retaliatory; that Captain Moore, the disciplinary hearing officer, pressured a witness to change his testimony so as to support a finding of guilt; that Major Helm assigned him to jobs outside of his medical classification; and that Meador pushed him into the barbeque pit and then denied him medical treatment. These are the claims remaining in the lawsuit.

These four defendants have been ordered to answer and have done so. On November 23, 2010, the defendants Moore, Hopson, and Helm filed a motion for summary judgment. Crumbley has filed various other motions since that date, but has not filed a response to the motion for summary judgment.

In their motion for summary judgment, the Defendants state that Captain Hopson acted reasonably in citing Crumbley for the disciplinary case involving the weapon. The summary

judgment evidence shows that an anonymous I-60 inmate request form was sent to Hopson alerting him to the presence of weapons in the cell of an inmate named Terry. Hopson knew that Crumbley and Terry were enemies and matched the note to a known sample of Crumbley's handwriting. Two weapons were found, and these were fashioned exclusively from materials available in the furniture factory where Crumbley worked. Hopson determined from firewatch logs that Crumbley had not been at work when the weapons were allegedly planted. Hopson also received information from a confidential informant corroborating Crumbley's involvement. Based on these available facts, the Defendants say, Hopson brought the charges against Crumbley, and so there is no evidence of a retaliatory motive.

With regard to Moore, the disciplinary hearing officer, the Defendants argue that in order to bring a due process claim, Crumbley must show that he was deprived of something in which he has a constitutionally protected liberty interest. In this case, the Defendants say, Crumbley's disciplinary conviction was overturned, and so he lost no good time credits. Although Crumbley was subjected to solitary confinement as well as restrictions on visitation and commissary, the Defendants argue that these punishments do not implicate any protected liberty interests. Furthermore, the Defendants contend that there is no evidence that Moore pressured Gilchrest to do anything; the summary judgment evidence shows that Gilchrest gave one fairly innocuous statement in the course of the investigation, and there is nothing to show that he ever had a different statement or was pressured to testify in the way that he did.

Finally, the Defendants state that there is no evidence that Major Helm had anything to do with Crumbley's job assignment, and that even if he did, Crumbley had no work restrictions preventing him from working in the furniture factory, and there is no evidence that Major Helms acted with deliberate indifference toward Crumbley or sought to retaliate against him. Thus, the Defendants ask that summary judgment be granted in their favor.

## Legal Standards and Analysis

### General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The fact that a non-movant failed to respond to a motion for summary judgment is not itself a basis for granting that motion; rather, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district has no duty to sift through the record in search of evidence to support a party's

opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

<u>Application of the Standards to the Facts</u>

The first defendant named is Captain Hopson, whom Crumbley says wrote a false disciplinary case against him for possession of a weapon. The claim of writing a false disciplinary case is in effect one for malicious prosecution. At one time, the Fifth Circuit held that claims of receiving a disciplinary case that had been falsified are "indistinguishable" from claims of malicious prosecution. Ordaz v. Martin, et al., slip op. no. 93-4170 (5th Cir., September 15, 1993) (unpublished). More recently, however, the Fifth Circuit has stated that there is no freestanding constitutional right to be free from malicious prosecution. Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). As a result, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. Figgs v. Vrazel, 106 Fed.Appx. 260, 2004 WL 1682752 (5th Cir., July 28, 2004); Williams v. Dretke. 306 Fed.Appx. 164, 2009 WL 62223 (5th Cir., January 12, 2009). To the extent that Crumbley contends that Hopson wrongly initiated disciplinary action against him, his claim is without merit.

Crumbley also contends that the initiation of this disciplinary action was retaliatory, apparently for his complaining that he should not be working in the factory. The Fifth Circuit has stated that to state a claim for retaliation, an inmate must allege a violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident, such as the filing of disciplinary reports, would not have occurred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The Court went on to observe that this requirement places a significant burden on the inmate, because mere conclusionary allegations of retaliation will not

6

withstand a summary judgment challenge; instead, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. A prison disciplinary report is not an absolute bar to a retaliation claim, but it is "potent and probative summary judgment evidence." The Fifth Circuit has also observed that the relevant showing must be more than a prisoner's personal belief that he is the victim of retaliation. Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In the present case, Crumbley offered nothing beyond bare and conclusory allegations that the weapons case was the result of a retaliatory motive. He simply maintained that he complained about his job assignment at the factory and subsequently received the disciplinary case; however, the mere fact that one event follows another is not proof of a causal relationship. In Reese v. Skinner, 322 Fed.Appx. 381, 2009 WL 1066997 (5th Cir., April 21, 2009), the Fifth Circuit held that an allegation that "harassment of him intensified after he started filing grievances" was insufficient to show retaliation; the Fifth Circuit said, citing Strong v. University HealthCare Systems, LLC, 482 F.3d 802, 808 (5th Cir. 2007), that "temporal proximity is insufficient to prove 'but for' causation." This comports with prior Fifth Circuit case law holding that the mere fact that one incident precedes another is not proof of a causal connection; this is the logical fallacy of post hoc ergo propter hoc (after this, therefore on account of this). *See* Tampa Times Co. v. National Labor Relations Board, 193 F.2d 582 (5th Cir. 1952) (post hoc ergo propter hoc is not sound logic).

Because Crumbley's retaliation claim is based on this fallacy, and he wholly fails to show that but for the alleged retaliatory motive, the complained-of action would not have occurred, his retaliation claim is without merit. Captain Hopson is entitled to summary judgment in his favor.

The second defendant named is Captain Moore, the disciplinary hearing officer. Crumbley states that Moore denied him due process by pressuring an officer named Gilchrest to change his testimony at the hearing.

7

Gilchrest's written statement reads as follows:

> While turning out the firewatch offender Crumbley, TDCJ No. 1607639, I officer J. Gilchrest regularly seen the offender with a legal folder, which was searched as he was going to work. At breakfast chow I would go to the furniture factory and pick up the offender for breakfast. After being brought to the chow hall I would resume my normal duties in the chow hall. On occasion have been called by my supervisor to do other duties, such as calling out the plumber, working on the sidewalk controlling traffic. But if in the chow hall when the offender was done eating I brought him back to the furniture factory. Until 4-23-07 I was unaware that the offender was to be signed out for breakfast at the north turnout gate. I don't recall the offender bringing his legal folder to breakfast chow.

Although Crumbley says that Moore "harassed Gilchrest into changing his statement," he offers nothing to show that Gilchrest would have said had he not been so harassed. Gilchrest's written statement is not particularly exculpatory; the prosecution's theory of the case was that Crumbley was released from the factory around 4 a.m. for breakfast, and that he left the chow hall and planted the weapons in Terry's cell before returning to work. Gilchrest says that if he was in the chow hall when Crumbley was finished eating, he would take Crumbley back to the factory, but that sometimes he was not in there.

More significantly however, Crumbley has failed to show a due process violation because he has not shown that the disciplinary case resulted in the deprivation of a constitutionally protected liberty interest. The Supreme Court has held that a prisoner's protected liberty interests are generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardships upon the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995). In this case, Crumbley's disciplinary case was overturned, and so no good time credits were lost. The fact that he spent 17 days in solitary confinement as a result of the disciplinary case is not an atypical or significant hardship in relation to the ordinary incidents of prison life and thus does not implicate a constitutionally protected liberty interest. Sandin, 115 S.Ct. at 2301-02; *see also* Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000).

The Fifth Circuit has held that in determining whether state action has violated an individual's right to procedural due process, the district court must first address whether or not the state action has deprived the person of a protected life, liberty, or property interest. Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984). In this case, Crumbley has not shown that he was deprived of a protected life, liberty, or property interest as a result of Captain Moore's actions. His claim against Moore is thus without merit.

In this regard, the Court also notes that the Constitution does not guarantee that only the guilty will be arrested; if it did, Section 1983 would provide a cause of action for every defendant acquitted and every suspect released. Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982). Similarly, the Constitution does not provide a cause of action for every inmate whose disciplinary case is overturned on appeal. *See* Carson v. Quarterman, slip op. no. 6:08cv512, 2009 WL 1505389 (E.D.Tex., May 27, 2009, appeal dismissed) (citing Smith v. Gonzalez in holding that "the mere fact that a disciplinary case is overturned does not thereby entitle the inmate to compensation for the punishment sustained before the overturning takes place.") The fact that this disciplinary case was overturned does not show that Crumbley was denied due process therein. His claim against Captain Moore is without merit.

The final defendant in this motion for summary judgment is Major Frank Helm. Crumbley says that Helm assigned him to work which was outside of his capacity to perform. Crumbley's medical records contain no indication that he had any restrictions which would prevent him from working in the furniture factory. Although he had restrictions indicating that he was not to be exposed to environmental pollutants or to work with chemicals or irritants, the evidence shows that Crumbley was assigned to work as a night watchman; there are indications in the record that as such, Crumbley would be in the factory alone, and he offers nothing to show that his medical restrictions prevented him from performing this task.

The Fifth Circuit has stated that requiring an inmate to work beyond his physical capacity may raise a valid civil rights issue, but the plaintiff must show that the work has been assigned with

knowledge of the condition and that it will be worsened thereby, or continued with the same knowledge. As a result, the Fifth Circuit said, only if the officials know that the work assigned will significantly aggravate a serious medical condition will there be an Eighth Amendment violation. Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989); *see also* Mendoza v. Lynaugh, 989 F.2d 191, 194 (5th Cir. 1993) (if prison officials assign an inmate with the knowledge that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference).

In this case, Crumbley offers nothing to show that even if Major Helm was involved in his job assignments, that such assignments were deliberately indifferent to his medical needs. Although Crumbley said that he was "disabled" and that he could not perform the work, the prison officials had no obligation to believe his account of his medical condition over that of the medical professionals. This Court has stated that "the TDCJ personnel were entitled to rely on the medical department's assessment of [the plaintiff's] condition in determining what he could and could not do." James v. Carlson, civil action no. 6:06cv120, 2007 WL 1231804 (E.D.Tex., April 25, 2007, no appeal taken); *see also* Smith v. Texas Tech University, slip op. no. 2:08cv103, 2010 WL 711808 (N.D.Tex., March 2, 2010, *aff'd* October 26, 2010) (stating that two named defendants "are entitled to rely on the judgment of medical professionals, and plaintiff's own opinion of his condition is not sufficient to place them on notice of medical facts"). Thus, even if Crumbley told Major Helm that he could not perform the work, Helm was entitled to rely on the medical department of Crumbley's condition rather than Crumbley's own representation.

For the same reason, Crumbley has failed to show that Helm was deliberately indifferent to his medical needs with respect to his job assignment. The Supreme Court has stated that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...

> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994).

In this case, Crumbley has failed to show that Major Helm knew of and disregarded an excessive risk to his health or safety. The fact that Helm did not change Crumbley's job assignment based solely on Crumbley's assessment of his condition does not show that Helm was deliberately indifferent to Crumbley's medical needs or safety. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Boudreaux v. Perego, 236 Fed.Appx. 890, 2007 WL 1290069 (5th Cir., May 2, 2007). This claim is without merit.

Neither has Crumbley set out a viable retaliation claim against Major Helm, because he has not shown that but for an alleged retaliatory motive, the action complained of – failure to assign him to a different job – would not have occurred. His claim against Major Helm is without merit.

## Qualified Immunity

In their answer and motion for summary judgment, the Defendants assert that they are entitled to Eleventh Amendment immunity and qualified immunity. To the extent that Crumbley may be suing the Defendants in their official capacity, they are entitled to Eleventh Amendment immunity. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02 (1984); *accord*, Hafer v. Melo, 112 S.Ct. 358, 363 (1991); Delahoussaye v. City of New Iberia, 937 F.2d 144, 146 (5th Cir. 1991).

The invocation of qualified immunity applies to claims for monetary damages brought against a government official in his individual capacity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a Government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a §1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of

11

Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed that his actions were proper. Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted).

In this case, Crumbley has failed to discharge his burden because he has not shown that any constitutional violations were committed, nor that any of the Defendants acted unreasonably in light of clearly established federal law. The Fifth Circuit has specifically held that the plaintiff's burden of overcoming the qualified immunity defense cannot be discharged by conclusory allegations and assertions. Michaelis v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). Crumbley's allegations are not sufficient to overcome the Defendants' entitlement to qualified immunity, and so the motion for summary judgment should be granted on this basis as well. It is accordingly

ORDERED that the motion for summary judgment by the Defendants Glenn Hopson, Connelly Moore, and Frank Helm (docket no. 68) be and hereby is GRANTED. It is further

ORDERED that the claims against the Defendants Hopson, Moore, and Helm are hereby DISMISSED with prejudice. These individuals are hereby dismissed as parties to this lawsuit. The dismissal of these claims and parties shall have no effect upon the Plaintiff's claims against the Defendant Sherly Meador.

So **ORDERED** and **SIGNED** this **17** day of **February, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE